# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AQUALLIANCE, )<br><br>            Plaintiff, )<br><br>        v. )<br><br>UNITED STATES BUREAU OF )<br>RECLAMATION, )<br><br>            Defendant. ) | Civil Action No. 14-cv-1018 (KBJ) |

## <u>MEMORANDUM OPINION</u>

Plaintiff AquAlliance is a non-profit organization "dedicated to defending northern California waters and to challeng[ing] threats to the hydrologic health of the northern Sacramento River watershed."  (Compl., ECF No. 1, ¶ 4.)  AquAlliance has requested documents from the Bureau of Reclamation ("Defendant" or "Bureau") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, concerning permits for water transfers in the state of California in 2013 and 2014.  (*See* Def.'s Statement of Material Facts Not in Dispute ("Def.'s SOF"), ECF No. 14, 3–4, ¶¶ 1–2.)  In response to Plaintiff's two FOIA requests, the Bureau conducted a search of its records, identified responsive documents, and turned those documents over to the organization; however, it redacted certain information on the basis of four FOIA exemptions.  (*See id.* ¶ 4.)  In the instant lawsuit, AquAlliance now challenges the Bureau's invocation of three of those exemptions.  (*See* Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. &

Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 15, 4–21, at 5.)[1]

Before this Court at present are the parties' cross-motions for summary judgment.  (*See* Def.'s Mot. for Summ. J., ECF No. 14, 1–2; Pl.'s Mot. for Summ. J., ECF No. 15, 1.)  Defendant maintains that the redacted information—which it has identified in two detailed *Vaughn* indices (*see* Vaughn Index: Vlamis BOR-2014-00035, ECF No. 13-1; Vaughn Index: Vlamis BOR-2014-00187, ECF No. 13-2)—properly falls under FOIA Exemptions 4, 5, 6, and 9.  (*See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), ECF No. 14, 5–19, at 6–19.)  Plaintiff does not contest Defendant's invocation of Exemption 5 (*see* Pl.'s Mem at 5 n.1), but it claims that Exemptions 4, 6, and 9 do not protect the rest of the withheld information (*see id.* at 7–21).

On September 30, 2015, this Court issued an order that **GRANTED IN PART AND DENIED IN PART** each of the parties' cross-motions for summary judgment.  (*See* Order, ECF No. 24.)  Specifically, the Court granted Defendant's motion with respect to the information Defendant withheld pursuant to Exemptions 5 and 9, and denied the motion in all other respects.  (*See id.*)  Conversely, Plaintiff's motion was granted as to the information Defendant withheld pursuant to Exemption 6 and denied in all other respects.  (*See id.*)  This Memorandum Opinion explains the reasons for that order.  In sum, the Court agrees with Defendant that Exemption 9 permits the withholding of information regarding the locations and depths of water wells (*see infra* Part III.A), and it agrees with Plaintiff that the names and addresses of well applicants and owners are not protected by Exemption 6 (*see infra* Part III.B).

---

[1] Citations to the documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

I.      BACKGROUND

As part of its ecological advocacy mission, AquAlliance "extensively comment[s]" on the California-area North-to-South water transfer programs that are under the purview of various state and federal agencies, including Defendant. (*See* Decl. of Barbara Vlamis ("Vlamis Decl."), ECF No. 15-1, 1–6, ¶ 3.) In order to comment on the 2014 water transfer program, Plaintiff submitted a FOIA request to the Bureau on November 12, 2013, seeking all documents and communications in the Bureau's possession "regarding the actual water transferred in 2013 . . . including but not limited to letters, contracts, memos, notes, e-mails, spreadsheets, reports, publications, maps, GIS files, photographs, analysis, and any other material regarding the 2013 water transfers." (*Id.* ¶ 4; Compl. ¶ 7; Def.'s SOF ¶ 1.) On May 1, 2014, Plaintiff submitted a second FOIA request, seeking "all applications to the Bureau . . . for approval of specific transfers of water in the year 2014 from the Sacramento River watershed to south of the Delta and all documents in the possession, custody, or control of the Bureau . . . that relate to any such applications." (Vlamis Decl. ¶ 5; Compl. ¶ 12; Def.'s SOF ¶ 2.)

The Bureau conducted searches in response to both requests, hunting for responsive records through "personal e-mail accounts, electronic files on [the Bureau's] public drives, the Bureau of Reclamation Water Operation and Recordkeeping System (BORWORKS), and . . . local paper files." (Decl. of Christopher S. Miller ("Miller Decl."), ECF No. 14-1, ¶ 3; Def.'s SOF ¶ 3.) However, when the Bureau had not made full determinations and disclosures with regard to both requests by June 16, 2014, AquAlliance filed the instant action in federal court, challenging the dilatory nature of Defendant's disclosures and arguing that the Bureau had run afoul of the statutory

deadline.  (*See* Compl. ¶¶ 18–19, 21.)  While the lawsuit was pending, the Bureau turned over the responsive records, but with certain information redacted.  Specifically, the Bureau redacted various data relating to well completion, well construction, and the physical location of wells, claiming that such information was protected under both Exemption 4 and Exemption 9.  (*See* Miller Decl. ¶ 4; Vlamis Decl. ¶ 6; Def.'s Mem. at 11–12, 17–18.)  The Bureau also redacted the names and addresses of various participants in water transfer programs or real water determinations, as well as those of a private well owner, claiming that the individuals' privacy interests outweighed any public interest in the information's release under Exemption 6.  (*See* Miller Decl. ¶ 4; Vlamis Decl. ¶ 6; Def.'s Mem. at 16–17.)

On February 2, 2015, Defendant moved for summary judgment, arguing that it is entitled to judgment as a matter of law because it "properly conducted a good faith search reasonably expected to identify documents responsive to [Plaintiff's] FOIA requests," (Def.'s Mem at 9) and "properly applied [statutory] exemptions to withhold [responsive] information[,]" (*id.* at 10).  Specifically, the Bureau asserts that it withheld information regarding well location, depth, and construction under both Exemption 4 (as confidential commercial information) and Exemption 9 (as geological and geophysical information concerning wells).  (*See id.* at 11–12; 17–18.) [2]  The Bureau also withheld predecisional and deliberative documents under Exemption 5 (*see id.* at 12–15) and the names and addresses of certain well owners and permit applicants under

---

[2] After AquAlliance asserted in this Court that maps showing well locations were not properly protected under Exemption 4, the Bureau reconsidered its determination on that issue and changed its mind. Thus, Defendant no longer seeks to apply Exemption 4 to any well location maps—but it continues to assert Exemption 9 as to those materials. (*See* Suppl. Decl. of Christopher S. Miller ("Miller Suppl. Decl."), ECF No. 21-1, 1–5, ¶¶ 3, 8, 10; Def.'s Opp. to Pl.'s Mot. for Summ. J. & Reply in Supp. of Own Mot. ("Def.'s Opp."), ECF No. 20, at 4–6.)

Exemption 6 (*see id.* at 16–17).  The Bureau attached a *Vaughn* index for each FOIA request, describing each redaction and explaining how the invoked exemption applied to the information it withheld.  (*See* Vaughn Index: Vlamis BOR-2014-00035; Vaughn Index: Vlamis BOR-2014-00187.)

AquAlliance filed a cross-motion for summary judgment and response to Defendant's motion on February 27, 2015.  (*See* Pl.'s Mot.)  Plaintiff does not challenge the adequacy of the search or the Bureau's assertion of Exemption 5, but it does contest the invocation of Exemptions 4, 6, and 9.  Specifically, AquAlliance argues that the water well construction and depth data are not protected under Exemption 4 because such information must be disclosed to the Bureau in order to obtain a water transfer permit and would not cause competitive harm if released.  (*See* Pl.'s Mem. at 8–11.)  Plaintiff also contends that Exemption 9 does not shield the information regarding well construction, location, and depth, because that exemption applies only to oil (not water) wells, and because the information is not the type of technical or scientific data that Exemption 9 protects.  (*See id.* at 11–14.)  Finally, AquAlliance argues that the names and addresses of well owners and permit applicants do not implicate a personal privacy interest because they constitute commercial information, and that even if a personal privacy interest is at stake, the public interest in disclosure outweighs the privacy concern.  (*See id.* at 14–21; Pl.'s Reply in Supp. of Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 23, 14–17.)

The parties' cross-motions have now been fully briefed and are ripe for this Court's review.

## II.    APPLICABLE LEGAL STANDARDS

### A.  Summary Judgment in FOIA Cases

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)).  Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if the pleadings, disclosure materials on file, and affidavits "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Judicial Watch v. Navy*, 25 F. Supp. 3d at 136 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).  In the FOIA context, a district court reviewing a motion for summary judgment conducts a *de novo* review of the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA.  5 U.S.C. § 552(a)(4)(B); *see In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008).  The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester, *see Willis v. DOJ*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), so summary judgment for an agency is appropriate only after the agency proves that it has "fully discharged its [FOIA] obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

A court may award summary judgment based solely upon the information provided in affidavits when the affidavits describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656

F.2d 724, 738 (D.C. Cir. 1981).

### B.  FOIA Exemptions 4, 5, 6 and 9

The FOIA "was enacted to facilitate public access to Government documents" in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotation marks and citation omitted).  The statute prescribes that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  However, the FOIA also specifies nine exemptions that permit agencies to withhold information from disclosure.  *See* 5 U.S.C. § 552(b); *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 18 (D.D.C. 2011).

Under Exemption 4, an agency need not disclose "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential."  5 U.S.C. § 552(b)(4).  Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  *Id.* § 552(b)(5).  This includes pre-decisional and deliberative documents, *see McKinley v. Bd. of Governors of Fed. Reserve Sys.*, 647 F.3d 331, 339 (D.C. Cir. 2011), as well as documents that would be protected by attorney-client privilege, *see In re Lindsey*, 158 F.3d 1263, 1268–69 (D.C. Cir. 1998).

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).  When evaluating an invocation of this exemption, the court first "must determine whether the [requested records] are personnel, medical, or

'similar' files[.]" *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008).  If so, then the court must determine whether disclosure "would  constitute a clearly unwarranted invasion of personal privacy," *id.* (quoting 5 U.S.C. § 552(b)(6)), by engaging in a two-step inquiry.  First, the court asks "whether disclosure of the files 'would compromise a substantial, as opposed to *de minimis*, privacy interest,' because '[i]f no significant privacy interest is implicated . . . FOIA demands disclosure.'"  *Id.* at 1229 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner* (*NARFE*), 879 F.2d 873, 874 (D.C. Cir. 1989)).  If a substantial privacy interest exists, then "the court applies a balancing test that weighs the privacy interest in withholding the record against the public's interest in the record's disclosure." *Judicial Watch v. Navy*, 25 F. Supp. 3d at 138 (citing *Judicial Watch v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 45 (D.D.C. 2012)).

Exemption 9 protects "geological and geophysical information and data, including maps, concerning wells."  5 U.S.C. § 552(b)(9).  This exemption has rarely been invoked or interpreted, *see* U.S. Dep't of Justice, *Freedom of Information Act Guide* (2009), 2009 WL 8545514, and it appears that no D.C. Circuit or Supreme Court opinion has ever dealt with this exemption at any length.

## III.   ANALYSIS

As explained, the Bureau has redacted certain information from the records that it has deemed responsive to AquAlliance's FOIA requests, citing FOIA exemptions 4, 5, 6, and 9.   AquAlliance does not challenge the adequacy of the Bureau's search or its redactions pursuant to FOIA Exemption 5.  (*See* Def.'s Opp. at 2; Pl.'s Mem at 5 n.1.) Thus, the dispute before this Court centers on the Bureau's invocation of Exemptions 4,

6, and 9.  For the reasons laid out below, this Court grants summary judgment for the

Defendant as to Exemption 9—which the Bureau has invoked in this case to justify

redaction of the same information that the Bureau seeks to withhold under Exemption 4

(*see* Vaughn Index: Vlamis BOR-2014-00035; Vaughn Index: Vlamis BOR-2014-

00187)—and grants summary judgment for the Plaintiff as to Exemption 6.

### A. The Bureau Properly Invoked FOIA Exemption 9 To Withhold Information Regarding Water Well Locations, Construction, And Depth

FOIA Exemption 9 permits the withholding of "geological and geophysical

information and data, including maps, concerning wells."  5 U.S.C. § 552(b)(9).  The

Bureau invokes this exemption to justify withholding various reports regarding the

construction of water wells and maps that depict well locations. (*See, e.g.*, Vaughn

Index: Vlamis BOR-2014-00035 at 1, 10; Vaughn Index: Vlamis BOR-2014-00187 at

5–6.)  The Bureau claims that this information would reveal "information concerning

the geological and geophysical nature of [the] wells," including their location and

depth, and therefore falls within the exemption.  (Miller Decl. ¶ 4; *see* Def.'s Mem. at

17–18; Def.'s Opp. at 9–12.)  AquAlliance argues that this information is outside the

scope of the exemption, both because it describes water wells rather than oil wells, and

because it is insufficiently scientific or technical.  (*See* Pl.'s Mem. at 11–14; Pl.'s Reply

at 9–13.)

The dispute over Exemption 9 boils down to two questions: first, does the

exemption cover water wells?  And, second, does it cover the type of information that

the Bureau has withheld here?  This Court concludes that the answer to both questions

is "yes."

1. <u>FOIA Exemption 9 Protects Information Regarding Water Wells</u>

As with any issue of statutory interpretation, the Court looks first to the statute's text. *See Milner v. Dep't of the Navy*, 562 U.S. 562, 569 (2011) (citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985)).  Exemption 9 states simply that the FOIA's disclosure requirements do not apply to "geological and geophysical information and data, including maps, *concerning wells*."  5 U.S.C. § 552(b)(9) (emphasis added).  The text is plain and unambiguous; on its face, no distinction is drawn among types of wells, and the text provides no reason to think that *water* wells would be excluded from the exemption's purview.  What is more, although few courts have had occasion to interpret or apply Exemption 9, not a single court has ever read the statute to include the restriction that Plaintiff urges.  And, to the contrary, at least two federal courts have applied Exemption 9 in the context of water wells.  *See Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1107–08 (C.D. Cal. 2005) (upholding EPA's invocation of Exemption 9 to withhold maps showing the location of publicly owned water wells); *Starkey v. U.S. Dep't of Interior*, 238 F. Supp. 2d 1188, 1196 (S.D. Cal. 2002) (upholding the Department of the Interior's invocation of Exemption 9 to withhold "information in table and narrative form about ground water inventories, well yield in gallons per minute, and the thickness of the decomposed granite aquifer").

By referring to legislative history, AquAlliance seeks to inject ambiguity into an otherwise plain statutory provision.  (*See* Pl.'s Mem. at 12–13 (arguing that Exemption 9's legislative history demonstrates that it applies only to oil wells); Pl.'s Reply at 10–12 (same).)[3]  But it is well established that there generally is no need to resort to

---

[3] A report from the House of Representatives that was penned in 1966 has this to say about Exemption 9:

legislative history if a statute is unambiguous.  *See, e.g.*, *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 212 (D.C. Cir. 2013) ("[W]e do not resort to legislative history to cloud a statutory text that is clear." (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994)).  Moreover, the legislative history that AquAlliance points to falls short of the organization's intended goal, insofar as it does not establish that oil and gas wells were Congress's sole concern in adopting Exemption 9.  To be sure, the contemporaneous witnesses referenced in the House Report had oil and gas—and the problem of improper speculation—on their minds when Exemption 9 was added, but as other courts have noted in this context, "water [too] is a precious, limited resource," *Starkey*, 238 F. Supp. 2d at 1195, and one of increasing scarcity and significance in the twenty-first century.  Thus, the expressed purpose of including a FOIA exemption to prevent a windfall for speculators also applies in the context of water wells, and this Court sees no reason that the House Report compels a strained reading of Exemption 9.

Consequently, this Court will take Congress at its word—*i.e.,* it will read Exemption 9 as excluding "geological and geophysical information and data, including maps, concerning wells" regardless of type—and it thereby declines Plaintiff's invitation to become the first court ever to read the proposed water-versus-oil

---

This category was added after witnesses testified that geological maps based on explorations by *private oil companies* were not covered by "trade secrets" provisions of present laws.  Details of *oil and gas findings* must be filed with Federal agencies by companies which want to lease Government-owned land.  Current regulations of the Bureau of Land Management prohibit disclosure of these details only if the disclosure "would be prejudicial to the interests of the Government" (43 CFR, pt. 2).  Witnesses contended that disclosure of the seismic reports and other *exploratory findings of oil companies* would give speculators an unfair advantage over the companies which spent millions of dollars in exploration.

H.R. Rep. No. 89-1497, at 11 (1966), *reprinted in* 1966 U.S.C.C.A.N 2418, 2428–29 (emphasis added); *see also Nat'l Res. Def. Council*, 388 F. Supp. 2d at 1108.

restriction into the Exemption 9 statute.

> 2.   FOIA Exemption 9 Protects The Type Of Information The Bureau Has Withheld In This Case

AquAlliance maintains that, even if Exemption 9 covers water wells, it does not protect reports detailing the construction of water wells and maps that depict well locations, such as those the Bureau has withheld here. (*See* Pl.'s Mem. at 13–14 (arguing that Exemption 9 does not cover the redacted information because "no proprietary technical or scientific secrets [would be] revealed"); Pl.'s Reply at 9–10.) At the outset, it is difficult to discern the basis for AquAlliance's objection, given that Exemption 9 is stated in broad terms, and beyond referencing "*geological* and *geophysical* information[,]" does not otherwise detail or characterize particular types of well-related information. *See* 5 U.S.C. § 552(b)(9) (emphasis supplied). AquAlliance insists that the statutory exemption must be read to embrace only information that would reveal "proprietary technical or scientific secrets" (Pl.'s Mem. at 14) based on the holding of *Black Hills Alliance v. United States Forest Service*, 603 F. Supp. 117 (D.S.D. 1984), which, as far as this Court can tell, is the first federal court opinion to interpret Exemption 9. (*See* Pl.'s Mem. at 13–14.) In that case, the District of South Dakota reasoned that the phrase "geological and geophysical information and data" suggested that "the exemption applies only to well information of a technical or scientific nature," and that the 1966 House Report suggested that the exemption is "limited in scope to scientific or exploratory findings concerning well drillings." *See Black Hills*, 603 F. Supp. at 122. Thus, the Court concluded that the exemption did not protect "the number, locations, and depths of . . . proposed exploration drill-holes," because "[that] sort of information falls short of the technical and scientific information

envisioned by Congress." *Id.*

This Court is not persuaded by *Black Hills*, and it rejects AquAlliance's "technical and scientific" argument.   Although the statutory reference to "data" suggests information of a scientific or technical nature, Exemption 9 covers a broader swath of material, given that it also expressly refers to "geological and geophysical information" generally.   Furthermore, it is especially odd for Plaintiff to insist that the exemption does not embrace maps that reveal well locations, when the statute expressly includes "maps" and when the location of a well (and also its depth) is seemingly prototypical "geophysical information."   Indeed, not all courts have agreed with *Black Hills*; the Central District of California looked to "the plain, unambiguous language of the [exemption]" and held that "Exemption 9 clearly allows for the withholding of maps concerning wells." *Nat'l Res. Def. Council*, 388 F. Supp. 2d at 1108; *see also id.* at 1092 n.5 (explaining that the withheld maps in that case "show[ed] the location of water wells").

This Court has reached the same conclusion.   The plain language of Exemption 9 permits the Bureau to redact maps and construction details that reveal geological and geophysical information about the wells, and this Court finds that, even when one draws all factual inferences in favor of Plaintiff, the Bureau has carried its burden of demonstrating that it has fully discharged its FOIA obligations with regard to this information under the circumstances presented here.   Thus, the Court has granted the Bureau's motion for summary judgment as to its invocation of Exemption 9, and the Court's explanation for its order can move on to address the Bureau's withholdings pursuant to Exemption 6, given that all of the information that the Bureau withheld

under Exemption 4 was also withheld under Exemption 9. *See, e.g.*, *Petrucelli v. Dep't of Justice*, 51 F. Supp. 3d 142, 163 n.9 (D.D.C. 2014) (noting that because the withheld information was protected under one FOIA exemption, the court "need not consider [the applicability of another exemption] separately with respect to the same information") (citing *Roth v. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011)).

### B. The Bureau Did Not Properly Invoke FOIA Exemption 6 To Withhold The Names And Addresses Of Participants In Government Water Programs And Well Owners

As noted above, Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). Citing this exemption, the Bureau has withheld the names and addresses of various participants in the water transfer programs and real water determinations referenced in the responsive documents, as well as those of a private well owner. (*See* Def. Opp. at 8.) Although it produced the equivalent information for family trust and corporate entities, the Bureau determined that individuals have greater privacy rights, and that the release of this information would result in a clearly unwarranted violation of their privacy. (*See* Def.'s Mem. at 17; Def.'s Opp. at 8.)

The threshold question in evaluating an invocation of Exemption 6 is whether the withheld information is, in fact, a "personnel, medical, or 'similar' file[]." *Multi Ag Media*, 515 F.3d at 1228. AquAlliance concedes that the information at issue qualifies (*see* Pl.'s Mem. at 16), and this concession is consistent with governing case law on this issue. *See U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (holding that Exemption 6 is not limited to "a narrow class of files" and covers "detailed Government records on an individual which can be identified as applying to that

14

individual"). Thus, the Court turns to the second question: whether disclosure would constitute a clearly unwarranted invasion of personal privacy. This inquiry proceeds in two steps. First, the court determines whether there is a greater than *de minimis* privacy interest in preventing the document's disclosure. *See Multi Ag Media*, 515 F.3d at 1229–30. If so, the court then engages in a balancing test that weighs "that privacy interest in non-disclosure against the public interest in the release of the records[.]" *Id.* at 1230 (quoting *NARFE*, 879 F.2d at 874).

With respect to the first step, this Court concludes that a greater than *de minimis* privacy interest is at stake here, albeit not a particularly substantial one. Although the D.C. Circuit has recognized that individuals have a "significant" privacy interest "in avoiding the unlimited disclosure of [their] name[s] and address[es][,]" *NARFE*, 879 F.2d at 875, "the disclosure of names and addresses is not inherently and always a significant threat to the privacy of those listed[,]" *id.* at 877, and "whether it is a significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue." *Id.* Both of these considerations indicate that the privacy interest in this case, while greater than *de minimis*, is not substantial. As to the characteristic revealed, the individuals affected would merely be identified as having participated in a water transfer program, having participated in a real water determination, or owning a water well; therefore, "[n]one of the information at issue in this case is stigmatizing, embarrassing[,] or dangerous[.]" *See Washington Post Co. v. U.S. Dep't of Agric.*, 943 F. Supp. 31, 34 n.3 (D.D.C. 1996). And, unlike other cases in which withholdings of personal information pursuant to Exemption 6 have been upheld, Defendant has not asserted that the consequences of

disclosure are likely to be notable.  For example, in *NARFE*, the D.C. Circuit approved the Office of Personnel Management's refusal to release the names and addresses of retired or disabled federal employees because the court was concerned that the retirees would be subjected "to an unwanted barrage of mailings and personal solicitations," *see NARFE*, 879 F.2d at 876, 878, which it characterized as "a substantial probability that disclosure [would] cause an interference with personal privacy," *see id.* at 878.  The Bureau makes no such suggestion in this case.

Indeed, the Bureau offers nothing more than conclusory allegations as to the existence of a substantial privacy interest—it cites no cases on this issue, and points only to the *ipse dixit* statement in its *Vaughn* index that the release of such information "would result in a clearly warranted violation of . . . privacy."  (*See* Def.'s Mem. at 17; Def.'s Opp. at 8.)  Such a sparse showing is manifestly insufficient to permit the Bureau to clear the summary judgment hurdle.  *See Judicial Watch v. Navy*, 25 F. Supp. 3d at 142 ("[A] bare assertion that a document's disclosure would constitute a clearly unwarranted invasion of . . . personal privacy is not sufficient to establish that a substantial privacy interest in preventing disclosure exists." (internal quotation marks and citation omitted)).  Notably, however, given that disclosure of names and addresses interferes with "an individual's control of information concerning his or her person," *NARFE*, 879 F.2d at 876 (quoting *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 763 (1989)), and also the D.C. Circuit's specific recognition that the standard at this stage in the inquiry is "not very demanding," *Multi Ag Media*, 515 F.3d at 1230, the Bureau's failure to meet its mark with respect to showing a substantial privacy threat does not necessarily mean that AquAlliance is

16

automatically entitled to summary judgment.  Put another way, it is by now well established that, even if the privacy interest at issue is not "particularly strong" (as in this case), so long as it is greater than *de minimis*, the court must proceed to the balancing test.  *See Multi Ag Media*, 515 F.3d at 1230; *see also id.* at 1230–31 ("Having found a greater than *de minimis* privacy interest in the requested information, [the court] must weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." (internal quotation marks and citation omitted)).

The text of Exemption 6, which prohibits disclosure *only* if the invasion of privacy that would result from disclosure is "clearly unwarranted," 5 U.S.C. § 552(b)(6), "instructs the court to tilt the balance in favor of disclosure."  *Getman v. NLRB*, 450 F.2d 670, 674 (D.C. Cir. 1971); *see also Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) ("[U]nder Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the [FOIA]."  (quoting *Wash. Post Co. v. U.S. Dep't of Health and Human Servs.*, 690 F.2d 252, 261 (D.C. Cir.1982)).  In this context, "the only relevant 'public interest in disclosure' to be weighed . . . is the extent to which the disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government."  *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *Reporters Comm.*, 489 U.S. at 775) (emphasis omitted).

The Bureau's only argument with respect to the balancing test is that disclosure here is not actually aimed at serving the public interest because, rather than using the

name and address information "to analyze government activity," AquAlliance would

utilize this information "in an attempt to proselytize." (Def.'s Opp. at 9.) But this

representation appears to mischaracterize Plaintiff's stated intentions, which relate

directly to the public's interest in disclosure. In the sworn statement of Barbara

Vlamis, AquAlliance's Executive Director, AquAlliance lays out the relationship

between the name and address information and the organization's efforts to monitor and

comment on the Bureau's water transfer programs. (Vlamis Decl. ¶ 9.) Specifically,

Vlamis details the organization's need to "track[] ownership" of the land and the wells

in order "to determine if the groundwater pumpers are moving any groundwater to other

land they own"; to alert counties if their local water is being removed (in violation of

local law); and to determine whether owners are participating in multiple water

programs, which "could bear on whether the[ir] [permit] applications should be

granted[.]" (*Id.*) Thus, the record evidence regarding how AquAlliance intends to

utilize the names and addresses that the Bureau has redacted indicates that such

information would contribute to "the basic purpose of the [FOIA][:] to open agency

action to the light of public scrutiny." *Dep't of the Air Force v. Rose*, 425 U.S. 352,

372 (1976) (internal quotation marks omitted). And the Bureau neither acknowledges

these public benefits of disclosure, nor articulates how these benefits are outweighed by

the relatively weak privacy interests at stake.

Consequently, this Court concludes that there is no dispute of material fact as to

the redactions the Bureau has made with respect to Exemption 6 because AquAlliance

has demonstrated that the public interest in disclosure outweighs the limited privacy

interests here.

**IV.    CONCLUSION**

The plain text of Exemption 9 permits the Bureau to withhold information regarding the construction, location, and depth of water wells.  However, Exemption 6 does not justify the Bureau's redaction of the names and addresses of various participants in water transfer programs, participants in real water valuations, and well owners because AquAlliance has demonstrated that the public's interest in the disclosure of this information outweighs the privacy interest at stake.  Therefore, as set forth in the Order issued on September 30, 2015, Defendant's motion for summary judgment has been **GRANTED IN PART and DENIED IN PART**, and Plaintiff's cross-motion for summary judgment has been **GRANTED IN PART and DENIED IN PART**.


DATE:  October 14, 2015                    *Ketanji Brown Jackson*
                                           KETANJI BROWN JACKSON
                                           United States District Judge